In the matter of ELIZABETH AGNES COMFORT, alleged to
be a lunatic.

[Filed October 10th, 1902.]

1. The provisions of the "Act concerning idiots, lunatics, habitual
drunkards and persons alleged to be lunatics by reason of their minds being
so unsound as to render them incapable of controlling themselves and their
property," approved March 23d, 1897 (*Gen. Stat. p. 1709*), do not require
the commissioners in an inquisition of lunacy to issue their precept to the
sheriff commanding him to return a jury of only twelve persons, nor do
they require the sheriff to return only twelve persons to make such inquiry.

2. Constables of the county are not improper persons to be selected and
summoned to serve on such a jury, and an inquisition is not irregular
because taken before a jury composed in part of such officers.

3. The neglect of the commissioners to charge certain pertinent requests.
made on behalf of the alleged lunatics, will not necessarily lead to the
quashing of the inquisition, when it appears that the commissioners did
charge the jury, but their charge is not laid before the court, and it is
not made to appear that they did not properly instruct the jury in the
matters which were the subject of the requests, the inquisition should not.
be quashed.

4. In this case, the evidence before the commissioners and jury was con-
tradictory and conflicting. There was no such preponderance against the
return as would justify its being set aside. But as there was thereby
raised a reasonable doubt of the propriety of the result, a traverse should:
be allowed if the alleged lunatic intelligently desires it.

On petition.

*Mr. James Parker,* for the petitioner.

*Mr. Alexander C. Young, contra.*

MAGIE, CHANCELLOR.

The questions under consideration in this matter are raised
by a petition filed in behalf of Elizabeth Agnes Comfort, the
purpose of which is to set aside an inquisition of lunacy, or to
permit her to traverse it.

The inquisition found petitioner to be of "unsound mind, so
that she is not capable of governing herself, her lands, tene-

ments, goods and chattels." It also found that she had been in that state of lunacy for about a year and six months prior to the taking thereof.

The application to set aside the inquisition is made upon several grounds, upon which it is contended the proceeding was so irregular as to require its being superseded by the issuance of a new commission.

It is first alleged that there was error committed by the commissioners in issuing their precept to the sheriff and requiring him thereby to produce before them twenty-four jurors, and in proceeding, when the jurors were produced under the process, to take the inquisition. The contention is that, by the provisions of "An act concerning idiots, lunatics, habitual drunkards, and persons alleged to be lunatics by reason of their minds being so unsound as to render them incapable of controlling themselves and their property," approved March 23d, 1887 (*Gen. Stat. p. 1709*), the precept should have required the sheriff to return a jury of only twelve persons in such a case, and that the return should have been that number of jurors.

Before the passage of that act there is no doubt that the practice adopted by the commissioners and the sheriff was entirely proper. *De Hart* v. *Condit, 6 Dick. Ch. Rep. 611.* It is to be observed that the act does not expressly require the commissioners to issue their precept for only twelve jurors, but only provides for the sheriff summoning twelve, instead of twenty-four, persons for the jury under the inquisition. Nor is the language directory upon the sheriff, but only permissive. The declaration is that it shall and may be lawful for the sheriff in such cases to summon twelve jurors, instead of twenty-four. In my judgment this does not require the commissioners to issue their precept for the less number, nor require the sheriff to summon the smaller number. It follows that the precept is not irregular, nor was the action of the sheriff in summoning the whole jury improper.

Furthermore, as the inquisition shows that it was found by many more than the twelve jurors necessary to make it effective, no injury occurred by the alleged irregularity.

It is next alleged that the sheriff summoned among the jurors

four of the constables of the county. Assuming the fact to be as alleged, although it does not appear upon the record, I find it impossible to discover any irregularity in the proceedings in this respect. The office of constable is not one disqualifying a citizen from being a juror in such a case. Service on such a jury in no respect interferes with performance of their official duty, and there was no irregularity in that respect.

It is next urged that evidence was improperly admitted of the opinion of witnesses who were not experts as medical men in respect to the question of the unsoundness of mind of the petitioner. The evidence was not taken stenographically, and what the course of it was counsel on both sides have, without objection from either side, undertaken to indicate by sworn statements made up from their respective notes. Their statements do not materially differ. Giving to the statement presented on the part of the petitioner the fullest credence, it does not appear that error was committed in the admission of the evidence objected to. The witnesses were personally acquainted with the petitioner. They testified to facts within their own knowledge, pertinent to the question, and were then permitted to express an opinion, with respect to the facts testified to, and the observation they had made of petitioner. This is within the rule well settled in this state. That their observation was not very recent, nor very prolonged, would go to the weight of their evidence, but not to its admissibility.

It is next contended that the commissioners refused to charge the jury as requested by the counsel who appeared for the petitioner. If this fact may be considered to be made out, it does not evince error, because it appears that the commissioners did charge the jury, and in the absence of that charge, which has not been laid before me, it is impossible to say that they were not properly instructed.

The other objections were directed to the weight and preponderance of the evidence. It is contended that the verdict is so contrary to the weight of evidence that it should be set aside and a new inquisition issued, or at least that the evidence leaves the matter in so much doubt that the petitioner should be permitted to traverse the inquisition. It is undoubtedly true

that the evidence is of a doubtful and uncertain nature. Petitioner has, upon three occasions, suffered from hemorrhages upon the brain, as a result of which she is slightly paralyzed on the right side, and is considerably affected with the mental infirmity called aphasia, being unable to select and use proper words to express her ideas. It seems, however, to be the result of the medical testimony that aphasia may exist while the mental faculties of judgment, memory and understanding remain unimpaired. If that be so, a person merely affected with aphasia is not necessarily of unsound mind. But there is other evidence, with respect to the condition of the petitioner, which is claimed to indicate that Mrs. Comfort is not only affected by aphasia, but is in a condition of *dementia*. The evidence referred to would seem to justify an inference that, since her attacks of hemorrhage, she has changed in character and habits; that, although she had never been a tidy woman, yet that of late she has become filthy, not only in the care of the rooms occupied by her, but also in her person; that she indulges in repetitions of exclamations which are unmeaning, or which have no relation to anything which has been said to her, or to anything which is transpiring about her, and other evidence of like character. On the other hand, there is evidence, in her behalf, that she is able to converse with persons and to intelligently transact business with them. The result reached was therefore arrived at upon evidence of a conflicting and contradictory character.

My review of the case as presented, assuming that, where the statements of counsel are divergent, the statement of petitioner's counsel should be accepted, does not lead me to accede to the contention that the verdict of the jury was against such a weight of evidence as to justify me in treating it as a nullity, but I am compelled to say that I deem it raised so reasonable a doubt as to the propriety of the finding that a proper discretion requires me to accede to her request for a traverse, if she intelligently desires to make such a traverse. *De Hart* v. *Condit, ubi supra; Lindsley's Case, 17 Stew. Eq. 564; In re Davenport, 18 Dick. Ch. Rep. 342.*

It does not appear in this case that petitioner will be unable to appear before me for examination in that respect. I will

therefore make an order that she do so appear at some motion day, at Trenton, or at Newark, or at Jersey City, at which I may be scheduled to be present. If her counsel conceives that she cannot safely be produced before me, and will present affidavits of her condition justifying it, I will appoint some judicious master to examine her in that respect and to report to me thereon. *Van Auken's Case, 2 Stock. 186;* In re Davenport, ubi supra.